LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Edna E. Gammon

v.

Archie Lee Collier

May 21, 1968

By JUDGE A. CHRISTIAN COMPTON

Attached you will find a copy of the order entered today sustaining the plaintiff's motion to set aside the verdict and awarding a new trial to the plaintiff on all issues.

There are two questions for decision in view of the plaintiff's motion to set the verdict aside and to award her a new trial upon the issue of damages only. (1) Was the verdict invalid as being either inadequate or contrary to Instruction 7, which was the damage instruction? (2) If the verdict was invalid, should a new trial be limited to the issue of damages only?

*The Verdict Was Invalid*

The verdict was in the amount of $188.00, which was the sum of the doctor's bill and the hospital bill (plaintiff's exhibit one).

The transcript of the testimony of Dr. Packer shows that the plaintiff was seen by him in December of 1966, four days after the accident and she was complaining of neck pain, back pain, showed extensive bruising of the left hip and thigh in an area measuring eight and a half inches by six inches; that she had stiffness of the neck

and low back; and that, as a result of the history of being struck down by a motor vehicle and as a result of his initial examination it was his opinion that the plaintiff injured the joints of her lower back and the joint of her neck and sustained a large bruise which was subsiding. "Her biggest problem was the continuing pain." said the doctor.

The plaintiff was seen about a dozen times by her physician after the accident and before the trial during the months of December, 1966; January, February, May, July, August, September and December of 1967; and January and February of 1968, the last time about one month before the trial. During this period, the doctor found "a great deal of stiffness of the neck, and lower back" and muscle spasm in December of 1966 (transcript, pages 6, 7); low back and neck pain and neck stiffness in January of 1967 (p. 7); pain over left hip, thigh and low back and headache in May of 1967 (p. 9); multiple joint pain involving the neck, low back, left hip area and also the right hip area in July of 1967 (p. 10); neck and low back pain in August 1967 requiring the assistance of the corset recommended for use because of the persistence of her complaints in May (p. 10); head, neck and low back pain which was aggravated by sneezing and discomfort in rotating neck to the left in December of 1967 (p. 11); neck and low back pain, headaches, stiffness on movement of neck in January of 1968; and low back, spine and hip pain in February of 1968. During this period medication was prescribed for relief of the plaintiff's pain.

While the plaintiff will not need "intensive" care in the future, she will "periodically" need medication. She has "other problems" such as nervousness, difficulty in sleeping, hay fever and a sinus condition which aggravates her neck pain. Her injuries "somehow aggravate her nervousness and tension" (p. 13).

The physician reported in February of 1967 that it was his opinion at that time that it would "probably be several more weeks before she was relieved of pain." In July of 1967 the doctor felt the plaintiff should report back to him only "whenever she is in trouble" and in January of 1968 he felt she would need no further medical treatment at this time.

While no transcript of the plaintiff's testimony is available, the writer's notes show that she described being struck in the pedestrian crosswalk and that she "landed out into the area where the cars go"; that she was "kind of dizzy" immediately after the accident; that the defendant asked her if she was hurt and she told him "yes"; that when she got home several hours after the accident, she was suffering with her leg and back which suffering has continued since the accident; that she cannot lift the patients at the nursing home like she did before the accident because of the stiffness and pain in her back; that her back bothers her often and that she has a steady pain in her neck which goes up into her head; and that it hurts to bend and lift a patient but she keeps working because she has to "keep going."

The defendant argues that the verdict should stand because the plaintiff suffered a comparatively minor injury. He urges that the plaintiff fully proved only a large bruise as the principal injury; that the jury may have felt that all visits to her doctor after the first two or three were related to the plaintiff's "other problems"; and, that they could well have awarded the plaintiff a sum for her hospital bill, three visits to the doctor, and the balance for paragraph one of the damage instruction. If this is how the jury computed the amount of the verdict, it was contrary to the law and the evidence as noted below.

As a general rule, a verdict is invalid which awards a plaintiff in a personal injury action the exact amount of medical expenses where a claim for pain and suffering is properly made and proven. In such a case some courts have reasoned that such a verdict is contrary to the law because it demonstrates that the jury has disregarded the instruction on damages. Other courts have said that the verdict is inadequate because the jury has failed to take into consideration all of the proper elements of damages to which the plaintiff was entitled under the evidence. *Deschene v. McDonald*, 86 N.W.2d 518, 520 (N.D. 1957); *Murrow v. Whiteley*, 244 P.2d 657, 662 (Col. 1952); *Ashland Coca Cola Bottling Co. v. Brady*, 66 S.W.2d 57, 58 (Ky. 1933); Annot., 20 A.L.R.2d 276. No Virginia case precisely on the point has been found.

The evidence conclusively showed in this case that, in addition to $188.00 in medical expenses, the plaintiff suffered an injury to her left thigh, her back and her neck all resulting in pain and discomfort for about fourteen months. The evidence does not support the argument that the jury was justified in concluding that all of the medical treatment after February of 1967 was not related to the accident but to her "other problems." While the instruction told the jury that they "may" consider the listed elements if they found for the plaintiff, this does not justify the jury in awarding nothing for items clearly proved by the evidence. Here nothing has been awarded for "bodily injuries sustained", and such injuries were proven; nothing has been awarded for the "effect of any such injuries" upon the plaintiff's health, and such effect was proven; nothing was awarded for "pain and mental anguish", and such was proven; and nothing was awarded for "inconvenience and discomfort", and such was proven, clearly, the jury has disregarded the instruction of the Court and the verdict must be set aside. Having found in favor of the plaintiff, the jury was bound to award her compensation for all the damages she suffered as a result of the accident. "When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then capriciously cut off a portion of that loaf as it hands it to the plaintiff." *Yacabonis v. Gilvickas*, 101 A.2d 690, 692 (Pa. 1954).

### The New Trial Should Be on All Issues

While the court in this case does not base its decision wholly on the inadequacy of the verdict but rather upon the failure of the jury to follow the court's instructions, those Virginia cases upon the issue of inadequacy point the way to the decision to grant a new trial on all issues, inasmuch as the practical effect of deciding that the verdict is invalid is the same regardless which ground for decision is used.

This case falls within class 5(c) as set out in Judge Epes's opinion in *Rawle v. McIlhenny*, 163 Va. 735, 749 (1934). It is there stated in part that in "cases of conflicting evidence, in which there is sufficient evidence to support a verdict in favor of either the

plaintiff or the defendant, but in which there is no clear preponderance in favor of either. . . [if]. . . the evidence with reference to liability has probably exerted a material influence upon the jury in determining the amount of the verdict, or the evidence warrants the inference that instead of deciding the question of liability, the jury has arbitrarily determined to make both parties bear a part of the burden of the injury, or for some other reasons the ends of justice would seem to be better promoted by granting a new trial on all issues, where the court sets aside a verdict of this class, it should grant a new trial on all issues."

Here the defendant claimed that the plaintiff stepped out into his right fender as the defendant entered the crosswalk while he was travelling at a moderate speed and proceeding on a green light. The plaintiff claimed that she stepped into the crosswalk when the light was green in her favor and she saw the defendant a distance away travelling west and that she failed to again look in his direction or see his car until she had walked to about the middle of the street and the collision was imminent. Her account was essentially corroborated by an eyewitness.

The evidence was conflicting and would have supported a verdict for either. There were close questions of primary and contributory negligence for the jury. Therefore, the case does not fall in the other classes mentioned in *Rawle*. The material influence upon the jury in fixing the amount of damages; the evidence warrants the inference that the jury has arbitrarily decided to make both parties bear the burden of the injury; and, in view of the close question of liability, the ends of justice would seem to be better served by granting a new trial on all issues. See also *Wright v. Estep*, 194 Va. 332, 337 (1952); *Chappell v. White*, 184 Va. 810, 819 (1946).

For the reasons stated the verdict is set aside and a new trial granted on all issues.